IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:23-MJ-00453-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>CHIRAG TOMAR,<br><br>                Defendant. | **OBJECTIONS AND MOTION TO REVOKE DETENTION ORDER** |

COMES NOW Defendant Chirag Tomar, through undersigned counsel and pursuant to 18 U.S.C. § 3145(b), and files his Objections and Motion to Revoke the Detention Order (N.D. Ga. Case No. 23-mj-01068-JKL, Doc. No. 6) entered by Magistrate Judge Larkins in the Northern District of Georgia on December 29, 2023, and moves this Honorable Court to grant bond to the Defendant in this non-presumption case under the Bail Reform Act, 18 U.S.C. § 3142, subject to appropriate conditions of release.

    **I.**      **INTRODUCTION**

Mr. Tomar is not alleged to have committed any of the enumerated offenses for which there is a presumption of detention in 18 U.S.C. § 3142. Therefore, pretrial release is the presumption. *See* 18 U.S.C. § 3142(b) ("The judicial officer *shall order the pretrial release* of the person . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.") (emphasis added).

He thus can only be detained pretrial if "no condition or combination of conditions will reasonably assure [his] appearance" or he is a safety risk to the community. Neither can fairly be

1

said to apply here. Mr. Tomar is from India, but he has ceded his passport and cannot leave the country without it. What is more, there are certainly "condition[s] or combination of conditions" that will assure his appearance—the Court could order home detention with GPS monitoring. Mr. Tomar has family in Atlanta (a sister and brother-in-law) and can stay with those family members while awaiting trial. The Court can also order a monetary bond or any other conditions it deems necessary—but this is not a case where "no condition or combination of conditions will reasonably assure [his] appearance." *See* 18 U.S.C. 3142.

What is more, Mr. Tomar has respectfully cooperated with law enforcement since the moment he encountered them. He was met by federal agents at the Atlanta airport and readily went with them to an interview room. He immediately waived his *Miranda* rights verbally and even signed a written waiver of rights. He answered every question they asked. He voluntarily turned over his phone to the agents and provided them with the password to unlock it.

It can also not reasonably be said he is a danger to the community. Mr. Tomar is accused of being part of a conspiracy that committed an online fraud. He is not accused of being the ringleader—indeed, as noted below, the investigating agents do not even know what role they allege Mr. Tomar played in the scheme. In any event, conditions of release can alleviate any concern of safety the community—the Court can even order that Mr. Tomar not be permitted to use a computer or cell phone.[1]

Lastly, and importantly, it is difficult for Mr. Tomar to prepare for trial while he is detained. He has been detained in Atlanta, where most federal inmates accused in North Carolina are, and it

---

[1] Should the Court order that Mr. Tomar be prohibited from using a computer as a condition of pretrial release, he respectfully requests an exception for reviewing the discovery in this case and preparing his defense. The discovery in this case is expected to be of a significant volume and will require lengthy analysis. His defense would be hampered without access to a computer for that purpose.

2

will be far easier for him to work with his counsel to formulate a defense and go through the extensive discovery in this fraud case if he is released.

The Bail Reform Act does not contemplate detention in a case like this. The Magistrate Judge in the Northern District of Georgia properly deferred to the Court here, and review of the Magistrate Judge's order is *de novo* in any event. Mr. Tomar should be released pending trial.

## II. PROCEDURAL POSTURE

Mr. Tomar was arrested at the Hartsfield Jackson Airport in Atlanta pursuant to an Arrest Warrant issued on December 20, 2023, by Magistrate Judge Metcalf. (Doc. No. 4). Mr. Tomar's arrest was precipitated by his travel from his country of citizenship and residence (India) to visit family that has lived and resided outside Atlanta for many years. Thus, rather than an indictment, the Arrest Warrant was supported by a Criminal Complaint and Affidavit expedited and signed by Special Agent Michael S. Hackney of the Secret Service. (Doc. No. 3). The Criminal Complaint and Affidavit allege violations of 18 U.S.C. § 1349 (wire fraud conspiracy) and 18 U.S.C. § 1956(h) (money laundering), (*id.*), neither of which is an enumerated offense in the Bail Reform Act that gives rise to a presumption of detention. *See* 18 U.S.C. § 3142(e)(3) (noting "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" and listing specified offenses).

Therefore, the government moved for detention under 18 U.S.C. §§ 3142(e) and (f), arguing that Mr. Tomar is a flight risk. (Doc. No. 2). At a December 29, 2023, hearing, the government also pursued, for the first time, detention based on alleged danger to the community.

3

(N.D. Ga. Case No. 23-mj-01068-JKL, Doc. No. 8).[2] After a brief hearing, Magistrate Judge Larkins ordered detention, specifically noting as follows:

> I'm going to order that you remain in detention <u>pending further proceedings</u>. Now, as I mentioned, this case is pending in the Western District of North Carolina. <u>You have the right to appeal this decision to the presiding judge in that district</u>, and [your lawyer] can help you with that should you wish to go that route. But until then you'll be committed to being transferred up there…

Tr. at 84:9-15 (emphasis added).[3] These remarks by Magistrate Judge Larkins reflect appropriate deference to the court of original jurisdiction consistent with the deference given to this Court by applicable law.

Pursuant to Local Rule 47.1, counsel has conferred with counsel for the United States, and the United States opposes this Motion. Counsel also requests a hearing and estimates such hearing would last 45 minutes.

### III. STANDARD OF REVIEW

18 U.S.C. § 3145(b) governs review and appeal of detention orders. It provides that "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b)

Importantly, review of the Magistrate Judge's prior order is *de novo*. *United States v. Cutter*, 637 F. Supp. 2d 348, 350 (W.D.N.C. 2009) (citing *United States v. Stewart*, 19 Fed.Appx.

---

[2] Citations to the hearing transcript ("Tr.") refer to the volume for the December 29, 2023, proceedings held by Magistrate Judge Larkins in the United States District Court for the Northern District of Georgia, Case No. 23-mj-01068-JKL, unless otherwise noted.

[3] Tr. pg. 84 is available at pg. 85 of Doc. No. 8, which bears a cover page. To avoid confusion, references to the transcript of proceedings herein utilize the page and line numbers assigned by the court report, not the page numbers assigned by the CM/ECF stamp.

4

46, 47 (4th Cir.2001)). Thus, this Court makes "an independent determination of the proper pretrial detention or conditions of release." *Id.*

### IV. LEGAL STANDARD

There is a traditional presumption favoring pretrial release for the majority of Federal defendants, which Congress recognized in enacting the Bail Reform Act. Stephanie Holmes Didwania, *Discretion and Disparity in Federal Detention*, 115 NW. U. L. REV. 1261, 1278 (2021) (noting "a clear preference for pretrial release"). Indeed, for defendants pending trial, bail is the rule, and pretrial detention the exception. *See United States v. Salerno*, 481 U.S. 739 (1987) (noting that the Bail Reform Act "carefully limits the circumstances under which detention may be sought to the most serious of crimes" in order to preserve the liberty of defendants awaiting trial).

"In order to detain a defendant pending trial, the judicial officer must 'find[ ] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Sprouse*, No. 3:12-CR-200, 2012 WL 2366455, at *1 (W.D.N.C. June 21, 2012) (citing 18 U.S.C. § 3142(e)). "With regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *Id.* (citing *United States v. Stewart*, 19 Fed. Appx. 46, 48–49 (4th 2001) (citations omitted). A higher standard—clear and convincing—applies to a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* (citations omitted).

The factors to be considered in making the determination are set forth in 18 U.S.C. § 3142(g) and include:

> (1) nature and circumstances of the offenses charged;
> (2) the weight of the evidence against the person;

5

> (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* (citing *Stewart*, 19 Fed. Appx. at 48). No single factor is dispositive, and ultimately, the Court is to consider whether there are any conditions or combinations of conditions that may suffice to address any valid concerns articulated by the government. *Id*. at 2.

## V. ARGUMENT

On *de novo* review, the Court should release Mr. Tomar on appropriate conditions, pending trial. There is no indication Mr. Tomar is a flight risk. Mr. Tomar has given up his passport, given up his phone (and its password), and voluntarily waived his *Miranda* right and spoken with agents. He has no criminal history. The Court has at its disposal plenty of conditions that would reasonably assure his return. Similarly, Mr. Tomar does not pose a risk to any person or anyone in the community—and conditions could alleviate any concern to the contrary anyway. The Bail Reform Act provides for pretrial release under these facts, as shown in the factors analyzed here.

**(1) The nature and circumstances of the offenses charged.**

The Criminal Complaint alleges wire fraud conspiracy and money laundering conspiracy. A wire fraud conspiracy requires a jury to find that two or more persons agreed to commit wire fraud and the defendant willfully joined the conspiracy with intent to further its unlawful purpose. *United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018). A money laundering conspiracy requires a jury to find that two or more persons agreed to commit one or more enumerated money laundering offenses, that the defendant knew the money laundering proceeds had been derived from an illegal activity, and the defendant joined the conspiracy knowingly and voluntarily. *United*

*States v. Ravenell*, 66 F.4th 472, 486 (4th Cir. 2023). Neither crime carries a presumption of detention under the Bail Reform Act.

Here the nature and circumstances of the offense are largely unknown. Investigating agents allege that a fraud has taken place, but they do not know Mr. Tomar's role in the scheme and, to his knowledge, they do not know anyone else involved in it, even though only conspiracies are alleged.

**(2) The weight of the evidence against the person.**

The Criminal Complaint alleges wire fraud conspiracy and money laundering conspiracy. But the link between Mr. Tomar and those crimes—both conspiracies—is weak. As noted above, the lead agent who investigated this matter was unable to define the defendant's alleged role in the scheme. (Tr. at 56:22-25) ("I don't think I can give a definitive answer on his exact role. At this point we know based – believed to be and it appears he's the owner of the account receiving fraudulent victims' funds."). In reality, the link between the defendant and the alleged fraud scheme is an email address and phone number associated with a crypto wallet that has received victim funds. (Tr. at 17:21-24). And the offending account is in somebody else's name, not Mr. Tomar's. (Tr. at 33:8-14). Moreover, the government has presented zero forensic analysis establishing whether or not Mr. Tomar has actually accessed the crypto wallet(s) at issue. In other words, it is quite possible that the person to whom the account is registered has stolen Mr. Tomar's identity, and he is in fact a victim.

The dearth of evidence is perhaps best understood through all the things Special Agent Hackney *could not* testify to, including but not limited to, the following testimony given on direct examination:

- (Tr. at 12:3-4) ("For the call logs, I can't speak specific to that because I have not had time to analyze them.");

7

- (Tr. at 12:16-17) ("I can't speak specific to that. I have no analysis as far as how many victims specifically.");

- (Tr. at 13:4) ("I'm not sure of the approximate number [of victims], sir.");

- (Tr. at 18:25-19:3) ("The analysis is still ongoing, and our financial analyst . . . is the one that conducted the traces and is continuing verifying all the analysis in that matter . . . .");

- (Tr. at 19:8-13) ("The funds had been – they had been – they've been traced I know, and it's part of the discovery items that are being provided. But all the funds do not go to the same wallet, either prior to or after the MEXC account, if that makes sense, because the funds do not come in together or leave together."); and

- (Tr. at 20:24-21:4) ("The review of [chirag.tomar777@gmail.com] emails originated as part of [an] FBI investigation. Most of that was prior to me becoming a part of the case . . . the original investigation into the email, the search warrant, et cetera, was prior to me becoming the case agent on the matter…").

All of those concessions were on direct examination. Unsurprisingly, the same themes continued on cross-examination:

- (Tr. at 34:10-16) ("I can't speak to where the money ended up eventually . . . .");

- (Tr. at 34:23-35:7) (Agent Hackney did not know how many "fraudsters" are allegedly involved);

- (Tr. at 50:17-18) ("Yes, and I'm speaking based off the written statement and the other agent. I did not do the interview . . . .");

- (Tr. at 52:2) (regarding whether the defendant applied for the visa application using the chirag.tomar777@gmail.com email account, "I don't know that off the top of my head, sir…"); and

- (Tr. at 53:12-14) ("I have not done a full analysis of the email. The email until currently was maintained for analysis by the Bureau, the FBI.").

In short and in sum, Special Agent Hackney's testimony at the detention hearing establishes that the analysis is incomplete, the investigation is ongoing, the links to the defendant are minimal, and the extent of the defendant's personal benefit, if any, from the alleged fraud scheme are unknown. There has been no proof presented that the defendant has personally accessed any of the accounts at issue or received any of the funds at issue.

**(3) The history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history.**

Mr. Tomar is a citizen of the Republic of India. He traveled to the United States of America on a tourist visa to visit his sister, his brother-in-law, and their two children, who have resided in the John's Creek area in Alpharetta, Georgia for approximately six (6) years. They were present at Mr. Tomar's detention hearing. (TR. at 74:21-75:23).

Granted, it is Mr. Tomar's first visit to the United States of America, but he was greeted at the Hartsfield Jackson International Airport by his brother-in-law and his brother, with whom he has eventual plans to conduct a recycling business (AX Recycling) in the United States. (Tr. at 74:11-15). All three voluntarily answered questions from law enforcement officers at the airport. As admitted by Agent Hackney, Mr. Tomar cooperated with law enforcement from the beginning. He immediately gave a verbal *Miranda* waiver, followed it with a signed *Miranda* waiver, and answered all of the agents' questions. He identified his email accounts and phone numbers. He even voluntarily gave up his cellular phone, turning it over to the agents, and provided them with the password to unlock it. (Tr. at 25:18-27:6; *see also* Tr. at 60:13-61:7). None of those actions comport with someone who is a flight risk. Mr. Tomar has done nothing but cooperate with law enforcement.

9

The Pretrial Services Report and the record from the detention hearing both reflect that Mr. Tomar has zero criminal history. (Doc. No. 10 at 3; Tr. at 28:3-5). He has no history of additional issues and no history of violating Court orders. (Tr. at 72:7-16).

Despite being detained for the entire duration of his stay here, Mr. Tomar has managed to retain counsel here in the Western District of North Carolina (such counsel has an office in the Northern District of Georgia and a Georgia attorney involved who will move to be admitted *pro hac vice* in the near future). He no longer has possession of his passport, which he readily ceded to agents, who provided it to his counsel.[4]

### (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Nobody can reasonably contend that Mr. Tomar poses any risk of violence to himself or the community. There are no facts that support such a contention. Thus, the only plausible source of potential risk relates to the fear that, if Mr. Tomar is involved with the fraudulent scheme, he could continue to defraud new victims via use of the internet. But this risk would apply to every criminal defendant in every criminal prosecution throughout the country, and thus, it is not an appropriate ground upon which to deny bond, particularly where there are conditions that can mitigate or eliminate this risk. If this were the standard, no defendant would ever receive bond. What is more, conditions of release (such as prohibiting use of the internet or a computer) would resolve such a concern in any event.

---

[4] His passport is currently in the possession of his prior counsel in Georgia; however, that attorney has agreed to provide it to current counsel as soon as approval is received from the investigating agents. Undersigned counsel will ensure Mr. Tomar does not, at any time have possession of the passport. Undersigned counsel is more than willing to provide it to pretrial services or the Court.

10

## VI. CONDITIONS

Mr. Tomar respectfully submits that he will agree to any conditions the Court wishes to impose upon him to reasonably assure his appearance at future proceedings and the safety of the community. Such conditions may include the following:

- Turnover of Mr. Tomar's passport to law enforcement.
- GPS monitoring and home confinement at his sister's home in Georgia.
- Restrictions on the use of cell phone and/or internet, to include monitoring of any use by pretrial services.
- A cash bond.

In addition to the proposed conditions listed above, Mr. Tomar is open to any other reasonable conditions the government or the Court may deem appropriate.

Using tools available to them, law enforcement was able to ascertain that Mr. Tomar had booked a flight to Atlanta and then obtain a Criminal Complaint and Arrest Warrant from this Court in plenty of time to greet Mr. Tomar when he deplaned stateside. In other words, even *with* a passport and originating in a foreign country, the United States was easily able to track his movement.

Likewise, these stringent conditions of release would make it nearly impossible to cause any harm to the community, particularly in the context of the crypto-currency internet domain and customer service call center spoofing crime that is alleged. Commission of the alleged crime necessarily requires use of cell phone or computer technology and access to the internet.

## VII. CONCLUSION

This Court has found that a combination of strict release conditions may be enough to justify release of a defendant even in a situation where the defendant, while on a federal bond, allegedly committed eight additional federal felonies. *Sprouse*, 2012 WL 2366455, at *2-3. It

11

logically follows that there is some set of conditions that will allow Mr. Tomar to enjoy the presumption of innocence to which he is entitled under the United States Constitution and the Bail Reform Act while he prepares to defend the charges against him in this Court. Pretrial release is particularly appropriate in a case such as this, where the law enforcement investigation that gave rise to his arrest is ongoing and admittedly incomplete.

WHEREFORE, Defendant respectfully moves this Honorable Court to revoke the Detention Order (N.D. Ga. Case No. 23-mj-01068-JKL, Doc. No. 6) entered by Magistrate Judge Larkins on December 29, 2023, and grant bond to the Defendant in this non-presumption case under the Bail Reform Act, 18 U.S.C. § 3142, subject to appropriate conditions of release.

Respectfully submitted this the 12th day of January, 2024,

                                        WOMBLE BOND DICKINSON (US) LLP

                                        s/ *Russ Ferguson*
                                        Russ Ferguson (N.C. Bar No. 39671)
                                        301 S. College Street, Suite 3500
                                        Charlotte, North Carolina 28202
                                        Telephone: (704) 331-4920
                                        Facsimile: (704) 338-7839
                                        Email: Russ.Ferguson@wbd-us.com

                                        *Counsel for Defendant Chirag Tomar*